IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TXU GENERATIONCOMPANY, LP,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 04-0098C<br><br>(Judge Williams) |

TXU GENERATION CO.'S RESPONSE TO GOVERNMENT'S MOTION TO STAY ALL PROCEEDINGS OR, IN THE ALTERNATIVE, FOR COORDINATED DISCOVERY REGARDING THE RATE AND SCHEDULE ISSUES

In its motion (the "Motion"), the government seeks an indefinite stay of this case until resolution of *Commonwealth Edison Co. v. United States*, No. 98-621C (Hewitt, J.); *Yankee Atomic Electric Co. v. United States*, No. 98-126C (Senior Judge Merow)[1]; and *Indiana Michigan Power Co. v. United States*, No. 98-486C (Hodges, J.), Motion at 1. The government did not confer with or discuss its Motion with TXU Generation Company, LP ("TXU") prior to filing.

TXU's position is as follows:

— TXU opposes the indefinite stay sought by the government;

— TXU instead requests that the Court order a stay for a limited period – through the end of 2004 – and then hold a status conference shortly thereafter for the purposes of determining how best to proceed;

---

[1] This case is currently scheduled for trial with two other cases, *Maine Yankee Atomic Power Co. v. U.S.*, No. 98-474C and *Connecticut Yankee Atomic Power Co. v. U.S.*, No. 98-154C.

— In any event, the government should file its answer to plaintiff's complaint; and

— TXU opposes common or coordinated discovery at this stage of the case or any bifurcation of discovery into "schedule" and "damages" issues.

In addition, TXU disagrees with much of the government's characterization of both the nature of this case and the prior proceedings in other spent fuel cases, Motion at 2-8. TXU has provided examples of some of these mischaracterizations, *see*, *infra*, p. 4, although TXU does not believe it is necessary to correct all of defendant's various inaccurate statements.

1. As an initial matter, the precise length of stay sought by the government is unclear. The government asks for a stay of varied durations: "until *completion of the trials*," Motion at 1; until "*resolution of the trials*," *id.;* "during the *pendency of the decisions*," Motion at 8; not "before the *lead cases are complete*," Motion at 10; until "there has been a *final ruling*" in the five cases, Motion at 12; or "until *decisions have been issued*" in the lead cases, Motion at 14. These vague statements leave uncertain whether the government seeks a stay until decisions are issued in the five cases by the trial court or until a final judgment, after all appeals have been exhausted. In any case, TXU opposes an indefinite stay, and instead requests that this Court enter a stay only through December 31, 2004, after which time the Court should hold a status conference to determine whether or not a continuation of the stay is appropriate.

2. The government's request for a stay is not, as the government asserts, "of a reasonable duration." Motion at 12. Assuming the government seeks a stay until final resolution of the five cases, the government's Motion effectively amounts to a request for

this Court to order a two to three year period of no action in this case, or more, while the five cases proceed to trial, await decision and appeal to the Federal Circuit, petitions for rehearing and/or *en banc*, and possibly even petition for certiorari to the U.S. Supreme Court. Nowhere does the government address the reasonableness of this extraordinary length of stay. To stay this case *now*, at the very outset, for two to three years (or more) is patently unreasonable, even if the "lead" cases may provide some helpful guidance. *See Landis v. North American Co.*, 299 U.S. 248, 256-57 (1936) (finding District Court stay through pendency of appellate consideration inherently excessive where the appellate process could take two or more years); s*ee also, Cherokee Nation of Oklahoma v. U.S.*, 124 F.3d 1413, 1416-18 (Fed. Cir. 1997) (reversing indefinite stay of cases because of government's failure to demonstrate a "pressing need" for stay).

Moreover, the government's principal arguments in support of its motion for an indefinite stay in the newly-filed spent fuel cases[2] are not persuasive. The government continues to espouse the very same (alleged) "hardship" and "fairness" arguments for collective treatment of the spent fuel cases that have already been soundly rejected by Chief

[2] We are aware of at least 21 cases in which the government has filed motions to stay: *Energy Northwest v. U.S.* (04-10); *Pacific Gas & Electric Company v. U.S.* (04-74); *Pacific Gas & Electric Company v. U.S.* (04-75); *Wisconsin Public Service Corporation v. U.S.* (04-71); *PPL Susquehanna, LLC v. U.S.* (04-70); *Interstate Power and Light Company v. U.S.* (04-67); *Constellation Generation Group, LLC, et al. v. U.S.* (04-68); *Cleveland Electric Illuminating Company, et al. v. U.S.* (04-69); *Dominion Resources, Inc., et al. v. U.S.* (04-83); *Dominion Resources, Inc., et al. v. U.S.* (04-84); *South Carolina Electric & Gas Company, et al. v. U.S.* (04-101); *Kansas Gas and Electric Company, et al. v. U.S.* (04-99); *Texas Genco, LP, et al. v. U.S.* (04-100); *TXU Generation Co. v. U.S.* (04-98); *Plaintiffs Power Cooperative v. U.S.* (04-106); *Union Electric Company v. U.S.* (04-97); *Portland Gen. Elec. Co. v. U.S.* (04-009); *FPL Energy Seabrook, LLC v. U.S.* (04-088); *BWX Tech., Inc. v. U.S.* (04-096); *S. California Edison Co. v. U.S.* (04-109); and *Illinois Power Co. v. U.S.* (04-133) . The government appears to be filing similar motions to stay in all of the newly-filed spent fuel cases upon the due date of its response to plaintiffs' complaints.

Judge Damich when he denied the government's motion to consolidate all of the spent fuel cases. *See* Exhibit 1, January 30, 2004 Order in *Yankee Atomic Elect. Co. v. U.S.*, No. 98-126C. The government's present motions to stay the newly-filed cases are essentially its third attempt, in new packaging, to litigate the spent fuel cases in only a small number of proceedings. *See* Exhibit 1, describing the government's prior consolidation efforts. Chief Judge Damich rejected the government's request for what the Court deemed "an extraordinary action" after determining that one proceeding on schedule issues would not effectuate any greater efficient administration of justice. Similarly, waiting for the conclusion of the five cases will not necessarily provide any greater efficiencies or the consistent rulings that the government claims to seek. There are substantial differences among the spent fuel cases, both as to the types of damages the different plaintiffs have suffered and as to the manner in which they may establish such damages at trial. For the most part, we expect that determination of each utility's damages will be a case-specific inquiry.

Additionally, although the government asserts that valuable guidance can be provided by the lead cases, the advantage of more guidance is uncertain because the government's brief demonstrates its unwillingness to abide by clear controlling precedent. For example, the government ignores the Federal Circuit's decision that the government breached its spent fuel contracts with all utilities, *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1342 (Fed. Cir. 2000) ("The breach involved all the utilities that had signed the contract – the entire nuclear electric industry."), and wrongly implies the Federal Circuit's decision is limited only to the specific cases addressed on appeal. Motion at 5. The government also mischaracterizes its obligation under the parties' contract as only to

*begin* its program of accepting spent fuel from the utility plaintiffs by January 31, 1998. Motion at 3-4. This characterization disregards holdings of this Court in spent fuel cases. *See Commonwealth Edison v. U.S.*, 56 Fed. Cl. 652, 664 (2003) ("Defendant's argument that it is not obligated to continue the acceptance of [spent fuel] at any minimum rate is in direct conflict with the plain language of the Standard Contract."); *Yankee Atomic Elec. Co. v. U.S.*, No. 98-126C, Order dated June 26, 2003 (adopting this Court's "well reasoned" ruling in *Commonwealth Edison v. U.S.* on the issue of rate of spent fuel acceptance) (Exhibit 2).

Nonetheless, TXU believes that developments in some of the earlier-filed cases may provide some guidance. By the end of the year, the Court may have issued opinions following the trials in *Indiana Michigan v. U.S.*, No. 98-4861, *Yankee Atomic v. U.S.*, No. 98-126C, *Connecticut Yankee v. U.S.*, No. 98-154C, and *Maine Yankee v. U.S.*, No. 98-474C, and trial will likely have concluded in *Commonwealth Edison v. U.S.*, No. 98-621C. Those trials and possible decisions may address some issues that are implicated in this case as well. Conversely, proceedings in those cases may have stalled by the end of the year or the precise issues presented at those trials may not turn out to be the same as those at issue in this case. A limited, reasonable stay should provide time to see how much useful guidance may be provided by the lead cases and should help inform any further decision about how best to productively and efficiently resolve this case.

For these reasons, the Court should stay this case only through the end of 2004 and then hold a status conference shortly thereafter to determine how best to proceed. Finally, even under a limited stay of other proceedings, the government should file its answer (although TXU would not oppose a reasonable enlargement of the government's time for doing so). The government's answer should help to better frame the disputed issues here

and should not be burdensome for the government to prepare, especially if the government acts consistent with its assertions that this case is substantially similar to all other spent fuel cases.

3. TXU also opposes any common or coordinated discovery at this time or any bifurcation of discovery into "schedule" and "damages" issues. There is no need for coordinated discovery to proceed at this time. It is yet unclear what discovery TXU will need, but conducting it with dozens of other cases would be unwieldy. Also, the reasons for bifurcating schedule issues from damages issues, for discovery purposes, are no longer present. Although the Court previously arranged for coordinated discovery on "schedule issues" separate from damages issues at the urging of all of the spent fuel plaintiffs then before the Court, that discovery ended up being largely structured to facilitate the plaintiffs' responses to the government's motions for summary judgment on these same narrow issues. Moreover, most of the discovery that could be conducted in a coordinated fashion – namely, the production of historical program documents from the government and depositions of government employees and contractors on historical program issues – has already been conducted, and TXU expects that it will permitted to use the fruits of that discovery in this case.

Further, the government's contention that damages discovery "cannot rationally proceed before there has been some determination of the rate and sequence of acceptance required by the Standard Contract," Motion at 13, is absolutely wrong and belied by the damages discovery that has already taken place, or is currently underway, by plaintiffs in earlier filed spent fuel cases where there has been no so-called determination of acceptance

rates or sequence of acceptance.[3] Indeed, in the *Yankee* cases, the government not only "rationally" conducted damages discovery, the government has also advanced its own alternative damages calculations based on different acceptance rate assumptions.

4. In sum, TXU opposes the government's vague request for an indefinite stay. Rather TXU requests a limited stay through 2004 to allow for an assessment of the guidance that may come from the trial court developments in the five cases. After the end of the year, the Court should hold a status conference to determine how best to proceed. Finally, the government should file its answer to TXU's complaint without substantial further delay.

Respectfully submitted,

s/ Jerry Stouck by s/ Monica A. Freas

Dated: April 13, 2004

JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
(202) 898-5800 (Telephone)
(202) 682-1639 (Facsimile)
*Counsel for Plaintiff*
TXU GENERATION COMPANY, LP

Of Counsel:
Robert L. Shapiro
Peter J. Skalaban
Monica A. Freas
SPRIGGS & HOLLINGSWORTH

[3] *See, e.g., Commonwealth Edison Co. v. U.S.*, No. 98-621C; *Yankee Atomic Elec. Co. v. U.S.,* No. 98-126C; *Maine Yankee Atomic Power Co. v. U.S.,* No. 98-474C; *Connecticut Yankee Atomic Power Co v. U.S..,* No. 98-154C; and *Sacramento Municipal Utility District v. U.S.*, No. 98-484C).